**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAVID TAYLOR,<br>*Plaintiff,*<br><br>v.<br><br>CITY OF PHILADELPHIA, et al.,<br>*Defendants.* | CIVIL ACTION<br>NO. 26-4324 |

**Pappert, J.** **November 9, 2026**

**MEMORANDUM**

In September of 2002, a Pennsylvania state court jury convicted David Taylor for robbing the Ten Spot Bar in Philadelphia. Twenty-two years later, a state judge vacated Taylor's conviction. After his release, Taylor filed this lawsuit under 42 U.S.C. § 1983 against the City of Philadelphia and five members of the Philadelphia Police Department: Cheryl Monzo,[1] James Merrick, Daniel O'Malley, Kevin Gage, and Captain Darby.

Taylor alleges that the defendants suppressed exculpatory evidence (Count I), fabricated and manipulated evidence (Count II), maliciously prosecuted him (Count III), conspired to deprive him of constitutional rights (Count IV) and that the City of Philadelphia maintained a policy, practice or custom that violated his constitutional rights (Count V). Defendants now move to dismiss all claims with prejudice. The Court grants the motion and dismisses all claims without prejudice, allowing Taylor to file a second amended complaint.

---

[1] Officer Monzo died before service of process in this case. *See* (Am. Compl. ¶ 10, Dkt. No. 10.)

I

A

Shortly before two o'clock on the morning of July 28, 2001, three or four masked men robbed the Ten Spot Bar at 1601 South Tenth Street in Philadelphia. (Am. Compl. ¶ 18, Dkt. No. 10.) The armed robbers forced sixteen victims into the basement and stole their belongings, while another victim was forced upstairs and sexually assaulted. (*Id.* ¶19.) The robbers took the bar's surveillance tape from the basement, destroying the visual evidence of their crimes. (*Id.* ¶ 20.)

Philadelphia police detectives quickly suspected Takey Taylor, whose DNA later matched crime scene evidence. (*Id.* ¶¶ 25, 57.) Officers also purportedly suspected David Taylor, Takey's brother. (*Id.* ¶ 25.) On August 1, 2001, David Taylor voluntarily went to the police station to deny his involvement in the robbery. (*Id.* ¶ 26.) Detectives Daniel O'Malley and Kevin Gage took his statement and then arrested and charged him with robbery, criminal conspiracy, rape based on conspiratorial liability, involuntary deviate sexual intercourse based on conspiratorial liability, and possession of an instrument of crime. (*Id.* ¶¶ 27, 72.)

Detectives O'Malley and Gage arrested David Taylor because two of the victims identified him from a photo array. (*Id.* ¶ 27.) Detective James Merrick and officer Cheryl Monzo prepared the array, which depicted David Taylor, Todd White, and Keith Graves, all of whom were later prosecuted. (*Id.* ¶¶ 27, 29, 67.) Monzo showed the photo array to six of the sixteen victims, and two, Vincent Rizzo and Joseph DeJesus, identified David Taylor as a robber. (*Id.* ¶¶ 28–29, 31.)

Monzo also took witness statements on July 28, July 31, and August 10, but some of those statements allegedly changed over time. (*Id.* ¶ 33.) Some witnesses later recognized the voice of Taylor's co-defendant, Keith Graves. (*Id.* ¶ 34.) Another, Micheline Medica, later said she saw the suspects outside the bar before the robbery. (*Id.* ¶ 35.) DeJesus stated at trial that David Taylor frequented the bar, contradicting his statements to Monzo. (*Id.* ¶ 36.)

On September 25, police organized a lineup at Curran-Fromhold Correctional Facility, which included David Taylor and a similar-looking man, Ramel Anderson. (*Id.* ¶ 40.) Nine of nineteen witnesses attended the lineup. (*Id.* ¶ 50.) Vincent Rizzo, who previously selected Taylor from the photo array, identified both Taylor and Anderson. (*Id.* ¶ 42.) The sexual assault victim also identified both Taylor and Anderson. (*Id.* ¶ 43.) Two others identified Anderson, but not Taylor. (*Id.* ¶ 44.) One, William Fiorillo, identified David Taylor alone, but then failed to identify him at the preliminary hearing two days later. (*Id.* ¶ 51.) Four other witnesses could not identify anyone from the lineup. (*Id.* ¶¶ 46–49.) Several witnesses provided height and weight descriptions that conflicted with Taylor's actual appearance. (*Id.* ¶ 52.)

David Taylor and three co-defendants, Takey Taylor, Todd White, and Keith Graves went to trial on September 16, 2002, and Takey Taylor pled guilty that day. (*Id.* ¶¶ 66, 67, 70.) He testified that his co-defendants were innocent and that he conspired with a different man. (*Id.* ¶¶ 66–68.) On September 24, 2002, the jury convicted David Taylor of criminal conspiracy, thirteen counts of robbery, possessing an instrument of crime, rape based on conspiratorial liability and involuntary deviate sexual intercourse based on conspiratorial liability. (*Id.* ¶ 72.) The Pennsylvania Superior Court later

vacated Taylor's rape and involuntary deviate sexual intercourse convictions but affirmed the rest. (*Id.* ¶ 74.)

The prosecution's case against David Taylor depended entirely on eyewitness identification testimony. (*Id.* ¶ 72.) There was no DNA evidence, no fingerprint evidence, and no confession connecting him to the crime. (*Id.* ¶ 71.)

B

At some point during the investigation, police received a tip referring to "Jay" and "Teke" and an address at 3109 Tasker Street. (*Id.* ¶ 57.) Police allegedly credited the tip because it linked James Lewis, a resident of 3109 Tasker Street, to Takey Taylor. (*Id.* ¶¶ 57, 59.) Officers obtained James Lewis's fingerprints and submitted them for comparison to evidence recovered from the crime scene. (*Id.* ¶ 58.) The fingerprint results for Lewis and the four co-defendants were inconclusive. (*Id.*)

Police never shared the tip and investigation of Lewis with the prosecution or defense. (*Id.* ¶ 60.) The prosecutor learned of the investigation and tip in 2003, and the Commonwealth later acknowledged that the detectives never shared information about Lewis with the prosecutor. (*Id.*) Captain Darby allegedly supervised the robbery investigation and knew that his officers submitted Lewis's fingerprints but never forwarded the evidence to Taylor's prosecutor. (*Id.* ¶ 63.) He also allegedly possessed a note that contained information about the investigation but never disclosed it to the prosecutor. (*Id.* ¶ 62.)

In 2022, the Philadelphia District Attorney's Conviction Integrity Unit reinvestigated the case. (*Id.* ¶ 76.) On January 4, 2024, James Lewis confessed to participating in the Ten Spot Bar robbery and exculpated both Keith Graves and David

Taylor. (*Id.* ¶ 77.) The Commonwealth then moved to vacate David Taylor's conviction, which a judge granted on October 16, 2024. (*Id.* ¶ 79.)

II

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Step one is to "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675). Next, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, for all "well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint. *Twombly*, 550 U.S. at 570.

III

Taylor first alleges the police officers suppressed evidence, violating the Due Process Clause of the Fourteenth Amendment, and the officers respond that they are entitled to qualified immunity. *See* (Defs.' Mem. of L. in Supp. of Mot. at 12; Dkt. No. 13.) Qualified immunity protects an official from civil liability for violating a plaintiff's statutory or constitutional rights if the official's conduct does not violate a "clearly established" right "of which a reasonable person would have known." *Dennis v. City of Philadelphia*, 19 F.4th 279, 287 (3d Cir. 2021) (quotation omitted). So to determine whether qualified immunity applies, the Court asks (1) whether the plaintiff sufficiently alleged the violation of a constitutional right and (2) whether the right was 'clearly established' at the time of the official's conduct. *Id.*

To evaluate which right was or was not "clearly established" in 2001 and 2002, however, the Court must first determine whether Taylor alleges a *Brady* or deliberate deception claim.

A

*Brady* and deliberate deception claims "are not necessarily coterminous": a *Brady* claim is, "in essence," a claim for failure to disclose material evidence, but a deliberate deception claim "must go beyond the failure to disclose evidence and arises when imprisonment results from the knowing use of false testimony or other fabricated evidence or from concealing evidence to create false testimony to secure a conviction." *Dennis*, 19 F.4th at 291. A deliberate deception claim therefore requires actions that conceal or suppress evidence plus the intent to deceive the court and jury to secure a

conviction. *See Walker v. City of Philadelphia*, No. CV 25-5002, 2026 WL 1984113, at *5 (E.D. Pa. July 9, 2026) (citing *Dennis*, 19 F.4th at 291).

Count I alleges a *Brady* claim for at least two reasons. First, Taylor states that each defendant suppressed or knew of "exculpatory evidence (Brady)" but alleges nothing about an intent or scheme to secure his conviction. (Am. Compl. ¶¶ 83, 87, 90, 93, 96, 99, 101.) Officer Monzo "knew . . . and did not include" information about Lewis in materials she sent to the prosecution. (*Id.* ¶ 83.) Detectives O'Malley and Gage "withheld" evidence of the tip and investigation of Lewis. (*Id.* ¶¶ 87, 90.) Captain Darby "never disclosed" the note and "possessed material exculpatory evidence and withheld it from the prosecution and the defense." (*Id.* ¶ 93.) Taylor's conclusory statements that the suppression "was affirmative and deliberate" does not allege that all the officers intended or schemed to deceive a judge and jury to secure his conviction. (*Id.* ¶ 129, 131.)

Second, Taylor clearly attempts to apply alleged facts to the elements of a *Brady* claim, not a deliberate deception claim. To state a *Brady* claim, Taylor must show: (1) the officers suppressed relevant evidence, (2) the evidence was favorable to him and (3) there is a reasonable probability that the outcome of the trial would have been different if the evidence had been disclosed. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Taylor alleges how and what evidence was suppressed, (Am. Compl. ¶¶ 128–129), why the "evidence was favorable[,]" (*id.* ¶ 132), and why "there is a reasonable probability that, had it been disclosed, the result of the proceeding would have been different[,]" (*id.* ¶ 133). *See also Walker*, 2026 WL 1984113, at *5 (finding that the

plaintiff clearly designed the claim to satisfy the *Brady* elements, "further demonstrating" it was not a deliberate deception claim).

B

The officers are entitled to qualified immunity on the *Brady* claim because their obligations were not "clearly established" in 2001 and 2002. A right is clearly established if its existence is "beyond debate" at the time of the challenged conduct. *George v. Reheil*, 788 F.3d 562, 572 (3d Cir. 2013). "Only controlling precedent in the relevant jurisdiction can place a constitutional question beyond debate." *Dennis*, 19 F.4th at 288.

Taylor argues that the Supreme Court clearly established officers' *Brady* obligations in *Kyles v. Whitley*, 514 U.S. 419 (1999) and *Strickler v. Greene*, 527 U.S. 263 (1999). *Kyles* held that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." 514 U.S. at 437. *Strickler* added that the *Brady* rule "encompasses evidence known only to police investigators and not the prosecutor," and thus requires prosecutors to work closely with police investigators. 527 U.S. at 280–81. But neither *Kyles* nor *Strickler* purport to impose *Brady* obligations on officers, let alone clearly establish them.

In 2005, the Third Circuit Court of Appeals clearly established a police officer's *Brady* obligations in *Gibson v. Superintendent of NJ Dep't of L. & Pub. Safety-Div. of State Police*, 411 F.3d 427 (3d Cir. 2005). In *Gibson*, the court held that a plaintiff's Section 1983 claim against police officers who allegedly suppressed exculpatory evidence was barred by qualified immunity because the right was not clearly

established in 1994. 411 F.3d at 442–43. The court distinguished between the prosecutor's *Brady* obligation to acquire exculpatory evidence from officers and the "related duty of the police to disclose information to the prosecutor[.]" *Id.* at 443–44 (citing *Kyles*, 514 U.S. at 437). The *Gibson* court explained that, in 2000, the Third Circuit only "assumed" for the sake of argument that police officers had *Brady* disclosure obligations but did not establish the right beyond debate. *Gibson*, 411 F.3d at 443–44 (citing *Smith v. Holtz* 210 F.3d 186, 197 n.14 (3d Cir. 2000)). Courts in this district have therefore concluded that *Gibson* clearly established this right. *See Hicks v. City of Philadelphia*, 783 F. Supp. 3d 834, 848 (E.D. Pa. 2025) (finding officers entitled to qualified immunity for *Brady* claims as late as 2002 under *Gibson*); *see also Outlaw v. City of Philadelphia*, No. 21-1290, 2021 WL 3471168, at *5–*6 (E.D. Pa. Aug. 6, 2021); *Lewis v. City of Philadelphia*, No. 10-2847, 2020 WL 1683451, at *10 (E.D. Pa. Apr. 6, 2020); *Swainson v. City of Philadelphia*, No. 22-2163, 2023 WL 144283, at *3 (E.D. Pa. Jan. 10, 2023).

It was not clearly established in 2002 that police officers, as opposed to prosecutors, had *Brady* disclosure obligations. *Dennis*, 19 F.4th at 288. Taylor's attempt to style Count I as a deliberate deception claim in his Response suggests he could possibly state a claim under that theory, but to do so he must again amend his complaint.

IV

Taylor next alleges that defendants Monzo, Merrick, O'Malley, and Gage fabricated the photo array and witness statements. The Due Process Clause of the Fourteenth Amendment prohibits police officers from fabricating evidence. *Halsey v.*

*Pfeiffer*, 750 F.3d 273, 292 (3d Cir. 2014). To state a claim for fabrication of evidence, Taylor must plausibly allege (1) the defendants formulated or submitted false evidence, *Mervilus v. Union County*, 73 F.4th 185, 194–95 (3d Cir. 2023), and (2) a reasonable likelihood that, without the use of that evidence, he would not have been convicted, *Halsey*, 750 F.3d at 294. The defendants challenge only the sufficiency of the first element.

To succeed, Taylor must show that the defendants formulated or submitted evidence they knew to be false, or at least recklessly disregarded the truth. *Mervilus*, 73 F.4th at 194–95. A police officer recklessly disregards the truth when, accepting the facts in the complaint as true, he "must have entertained serious doubts as to the truth of [the evidence] or had obvious reasons to doubt the accuracy of the information." *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (internal quotation marks and citation omitted); *Mervilus*, 73. F.4th at 194 (citing *Wilson* for the proposition that fabrication of evidence claims may be proven using a reckless disregard standard).

To start, Taylor alleges no facts that the officers had obvious reasons to doubt the accuracy of the photo array identifications. He claims that Monzo did not show the array to more witnesses "so as to generate identifications while avoiding the non-identifications that a complete showing would have produced." (*Id.* ¶ 138.) This is speculative, and his theory is premised entirely on Monzo's supposed obligation to show all victim witnesses the photo array. Taylor otherwise alleges nothing that could establish Monzo coerced or manipulated the six witnesses who viewed the array or that the array itself was suggestive. *See, e.g., United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir. 2003) (explaining that suggestive photo arrays "can constitute a denial of due

process"). Even if Monzo and Merrick added Taylor to the photo array because he is Takey Taylor's brother, nothing in the complaint implies that the positive photo identifications were inaccurate or that Monzo misrepresented to others how many witnesses viewed the array. Finally, Taylor alleges no facts that suggest the arresting officers, O'Malley and Gage, had obvious reasons to doubt the identification information that Monzo and Merrick produced.

Taylor next claims that Officer Monzo used "[s]uggestive and coercive interview practices" because several witness statements changed over time. (Am. Compl. ¶¶ 37, 82.) After their first statements to Monzo, several unnamed witnesses allegedly recognized co-defendant Keith Graves's voice. (*Id.* ¶ 34.) Another witness later claimed she saw the suspects outside the bar before the robbery. (*Id.* ¶ 35.) Finally, DeJesus testified at trial that David Taylor frequented the bar, contradicting his statements to Monzo. (*Id.* ¶ 36.) None of these alleged facts show that Monzo used suggestive or coercive interview practices to fabricate witness statements. And, again, Taylor alleges no facts connecting Merrick, O'Malley or Gage to Monzo's supposed fabrication.

V

Taylor next alleges the defendants maliciously prosecuted him in violation of the Fourth Amendment of the U.S. Constitution. To state a claim for malicious prosecution under the Fourth Amendment, Taylor must show (1) the defendants initiated a criminal proceeding, (2) they did so without probable cause, (3) they acted maliciously or for a purpose other than bringing him to justice, (4) he was seized and (5) the criminal proceeding ended in his favor. *Halsey*, 750 F.3d at 296–97. The defendants challenge only the probable cause element.

While juries typically decide whether probable cause exists, *see Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000), dismissal is appropriate where, as here, the alleged facts taken as true still support a finding of probable cause. *See Olson v. Ako*, 724 Fed. App'x. 160, 164 (3d Cir. 2018) (vacating a district court denial of a motion to dismiss because the complaint alleged facts sufficient to infer probable cause). Probable cause to arrest exists when facts within an officer's knowledge would lead a reasonable person to believe the suspect committed or is committing an offense. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir.1995). While "a positive identification by a victim witness, without more, would usually be sufficient to establish probable cause. . . . [i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers could outweigh the identification such that probable cause would not exist." *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000). An officer's post-arrest knowledge is irrelevant because probable cause is an objective inquiry based upon the information available at the time of arrest. *Florida v. Harris*, 568 U.S. 237, 249 (2013).

Taylor alleges that detectives O'Malley and Gage arrested him on the strength of two photo array selections by victims DeJesus and Rizzo. (Compl. ¶ 27.) He alleges nothing to imply that DeJesus or Rizzo were unreliable when they identified David Taylor as a robber or that Monzo and Merrick knew of independent evidence that would exculpate Taylor and the identifications support a finding of probable cause. *Wilson*, 212 F.3d at 790; *see also Gonzales v. Target Corp.*, No. 25-6923, 2026 WL 1243276 at *3–*4 (E.D. Pa. May 6, 2026) (granting a motion to dismiss a claim of malicious

prosecution because alleged witness identifications supported a finding of probable cause).

VI

The Court dismisses Taylor's remaining claims because § 1983 conspiracy and municipal liability claims require deprivations of constitutional rights. *See Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (explaining that a defendant's overt act depriving a plaintiff of constitutional rights is required for § 1983 conspiracies); *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir.1996) (explaining that an underlying constitutional violation is required for *Monell* municipal liability).

VII

A court should grant a plaintiff leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). If a civil-rights complaint fails to state a claim, a court must grant leave to amend unless amendment would be futile or inequitable. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018). Amendment is futile if no new facts could fix the complaint's problems. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988). And amendment is inequitable if the plaintiff unduly delays, shows bad faith, or if amendment would unfairly prejudice the defendant. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

The Court will allow Taylor to file a second amended complaint because amendment would neither be futile nor inequitable. He may be able to allege facts to address the problems identified in this Memorandum and he hasn't shown bad faith. Finally, amendment wouldn't prejudice the defendants. If Taylor amends, they will defend against the same or fewer claims, just based on new facts.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.